2004 ND 161

GRAND FORKS COUNTY, Petitioner
and Appellant

v.

Suzanne J. TOLLEFSON, Troy O'Hara,
Darrell Kvernen, Michael Coachman,
Respondents

and

Job Service North Dakota, Respondent
and Appellee.

No. 20030370.

Supreme Court of North Dakota.

Aug. 4, 2004.

Deborah J. Carpenter, Special Assistant State's Attorney, Bismarck, N.D., for petitioner and appellant.

Kevin McCabe, Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for respondent and appellee.

NEUMANN, Justice.

[¶ 1] Grand Forks County appealed from a district court judgment affirming the decision of Job Service that the County was properly charged for a portion of unemployment benefits paid to Suzanne Tollefson, Troy O'Hara, and Darrell Kvernen and dismissing the County's petition for judicial review of the claim of Michael Coachman. We affirm.

I

[¶ 2] Tollefson, O'Hara, Kvernen, and Coachman were employed by the County. In 1999, Tollefson, Kvernen, and Coachman resigned to accept other employment; O'Hara was fired for misconduct. Each employee applied for unemployment benefits with Job Service, and each was found to be ineligible because they had either voluntarily quit or had been discharged for cause.

[¶ 3] Each of the employees subsequently worked for other employers, left that employment, and again applied for unemployment benefits. In each case the employee was found eligible for benefits. Job Service notified the County that, as a base-period employer, it would be liable for a portion of the benefits paid to each of the employees.

[¶ 4] The County appealed Job Service's initial decisions and requested hearings in each case. After the hearings, the appeals referee determined the County was liable for benefits, and the County appealed each case to Job Service. After various remands and appeals in light of the procedural requirements enunciated in *Stutsman County v. Westereng*, 2001 ND 114, 628 N.W.2d 305, new hearings were held in each case. The appeals referee again determined the County was liable for a portion of the employees' benefits. The County appealed the appeals referee's decisions in the Tollefson, O'Hara, and Kvernen cases to Job Service. The County did not appeal the referee's decision in Coachman's case to Job Service. Job Service affirmed the referee's decisions in Tollefson, O'Hara, and Kvernen's cases.

[¶ 5] The County filed petitions for judicial review in the district court and the four cases were consolidated. The district court dismissed the County's petition for review of the Coachman case and affirmed Job Service's decisions in Tollefson, O'Hara, and Kvernen. The County has appealed from the judgment.

II

[¶ 6] When a decision of an administrative agency is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency, rather than the decision of the district court. *Gartner v. Job Service North Dakota*, 2004 ND 135, ¶ 3, 681 N.W.2d 828; *Baier v. Job Service North Dakota*, 2004 ND 27, ¶ 6, 673 N.W.2d 923. The district court's analysis, however, is entitled to respect if its reasoning is sound. *Gartner*, at ¶ 3; *Baier*, at ¶ 6. Under N.D.C.C. §§ 28–32–46 and 28–32–49, we must affirm an agency's decision unless (1) the decision is not in accordance with the law; (2) the decision violates the appellant's constitutional rights; (3) the provisions of N.D.C.C. ch. 28–32 have not been complied with in the proceedings before the agency; (4) the agency's rules or procedures have not afforded the appellant a fair hearing; (5) the agency's findings of fact are not supported by a preponderance of the evidence; (6) the agency's conclusions of law are not supported by its findings of fact; (7) the agency's findings of fact do not sufficiently address the evidence presented to the agency by the appellant; or (8) the agency's conclusions of law and order do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge. *Baier*, at ¶ 6; *Morris v. Job Service North Dakota*, 2003 ND 45, ¶ 5, 658 N.W.2d 345.

[¶ 7] In reviewing an agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we decide only whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence. *Gartner*, 2004 ND 135, ¶ 3, 681 N.W.2d 828. Questions of law, including interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Morris*, 2003 ND 45, ¶ 5, 658 N.W.2d 345. A person is denied due process or a fair hearing when defects in the hearing process might lead to a denial of justice. *Gullickson v. Kline*, 2004 ND 76, ¶ 22, 678

N.W.2d 138; *Westereng*, 2001 ND 114, ¶ 8, 628 N.W.2d 305.

## III

[¶ 8] The County contends Job Service erred in determining that the "benefit year" for calculating the County's liability for benefits commenced when each employee filed their first claim for benefits when leaving employment with the County. The County argues the "benefit year" should begin when the employees filed their second claims for benefits after the termination of their subsequent employment. Analysis of this issue requires a detailed examination of the statutes governing unemployment benefits.

[¶ 9] When a claimant is determined to be eligible for and receives unemployment benefits, the benefits are charged to the employee's base-period employers:

> Benefits paid to an individual must be charged against the accounts of the individual's base-period employers. The amount of benefits so chargeable against each base-period employer's account must bear the same ratio to the benefits paid to an individual as the base-period wages paid to the individual by such employer bear to the total amount of the base-period wages paid to the individual by all of the individual's base-period employers.

N.D.C.C. § 52–04–07(1). An employee's base period is "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." N.D.C.C. § 52–01–01(3). A base-period employer is one who paid wages to the employee during the base period. N.D.C.C. § 52–01–01(4) and (5); *see Westereng*, 2001 ND 114, ¶ 9, 628 N.W.2d 305.

[¶ 10] When, as in these cases, employment with the base-period employer was terminated for cause or by the employee's voluntary resignation, the base-period employer's liability for benefits depends upon whether it is a reimbursable method employer or a contributing employer. Although private employers in the state are required to make regular contributions into the Unemployment Compensation Fund based upon their payroll, *see* N.D.C.C. ch. 52–04, governmental employers may elect to either make regular contributions or to reimburse the Fund for actual benefits paid to its former employees, effectively self-insuring for unemployment claims. N.D.C.C. § 52–04–19.1; *Westereng*, 2001 ND 114, ¶ 10, 628 N.W.2d 305. The County elected the reimbursable method, and its liability for benefits is therefore governed by N.D.C.C. § 52–04–19.1(2)(c):

> In lieu of contributions an employer may elect to pay to the bureau for the unemployment fund an amount equal to the amount of benefits paid under chapters 52–06 and 52–07.1 which are attributable to wages paid in the employ of such governmental employer, to individuals for weeks of unemployment.

[¶ 11] We explained the significance of the distinction between contributing employers and reimbursing employers in cases such as these in *Westereng*, 2001 ND 114, ¶ 11, 628 N.W.2d 305:

> Job Service correctly concluded Stutsman County, as a reimbursable method employer, is not excused from being charged because Westereng voluntarily left her employment with Stutsman County. N.D.C.C. § 52–04–07. Section 52–04–07(1), N.D.C.C., requires benefits paid to an individual "must be charged against the accounts of the individual's base-period employers." However, N.D.C.C. § 52–04–07(2)(b) provides an exception, stating an employer's account may not be charged:

With benefits paid to an individual who left the employment of the employer voluntarily without good cause or with good cause not involving fault on the part of the employer or who was discharged from employment by the employer for misconduct.

Although this exception applies to contributing employers, this exception does not apply to Stutsman County because N.D.C.C. § 52–04–07(3) provides "[s]ubsection 2 does not apply to benefit payments which are financed under a reimbursable method." Therefore, the fact Westereng left Stutsman County voluntarily does not absolve Stutsman County of future responsibility as a base-period employer. If Westereng is eligible for benefits, Stutsman County is chargeable for its proportionate share of the benefits paid.

Thus, the fact that these employees left their employment with the County under disqualifying circumstances does not absolve the County of liability as a base-period employer when the employees are found to be eligible for benefits after termination of subsequent employment.

■ [¶ 12]  This case presents a slight factual variation from *Westereng*. The claimant in Westereng did not file a claim for benefits when she voluntarily left her employment with Stutsman County, but first filed when she left her subsequent employer. In this case, the employees filed claims when they left their employment with the County and were found to be ineligible for benefits. They each then secured additional employment, and filed a second claim for benefits when the subsequent employment ended. The County contends the second application for benefits constituted a new claim, and the benefit year for purposes of calculating the claimants' base period should have begun

with the second application for benefits, not the first.

[¶ 13]  As previously noted, a base-period employer is one who paid wages to the employee during the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year. N.D.C.C. § 52–01–01(3), (4), and (5). "Benefit year" is defined in N.D.C.C. § 52–01–01(6):

> "Benefit year" means the fifty-two-week period beginning the first week in which an insured worker first files a request for determination of the worker's insured status and thereafter the fifty-two-week period beginning the first week in which the individual next files such request after the end of the individual's last preceding benefit year. The filing of a notice of unemployment must be deemed a request for determination of insured status if a current benefit year has not previously been established.... A subsequent benefit year cannot be established until the expiration of the current benefit year.

■ [¶ 14]  In construing a statute, we try to ascertain the intent of the legislature by looking at the plain language of the statute and giving each word of the statute its ordinary meaning. N.D.C.C. § 1–02–02; *Gratech Co. v. Wold Eng'g*, 2003 ND 200, ¶ 10, 672 N.W.2d 672; *In re Guardianship of Shatzka*, 2003 ND 147, ¶ 5, 669 N.W.2d 95. If the language of a statute is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. *Gratech*, at ¶ 10.

[¶ 15]  Section 52–01–01(6), N.D.C.C., is clear and unambiguous. A benefit year is the fifty-two-week period beginning when the employee first files a request for determination of insured status, and a subsequent benefit year cannot be established until the expiration of the current benefit year. Thus, a benefit year for each of

these employees commenced when they filed their first claim for benefits after leaving employment with the County, and a new benefit year could not commence until expiration of that first benefit year. When the employees filed subsequent claims for benefits prior to expiration of the previously established benefit year, Job Service correctly determined the amount of contributions due from base-period employers by calculating the base period from commencement of that benefit year. The County's argument that the first claim for benefits should be disregarded, and the benefit year should be calculated from the date of the second, "new" claim for benefits, is contrary to the clear language of the statute.

[¶ 16] We conclude Job Service did not misconstrue the law in determining the County's liability for benefits.

## IV

■ [¶ 17] The County argues the procedure employed by Job Service violated due process requirements, as enunciated in *Westereng*, because at three of the hearings the employee did not appear or testify.

[¶ 18] In each of these cases the employees were found to be eligible for benefits after subsequent employment ended. The County was then given notice the employee had filed a claim for benefits and the County would be liable for a portion of those benefits. The County requested hearings in the cases and, prior to the hearings, was provided an abstract of the information used to determine the employee's eligibility for benefits and to calculate the County's proportionate share of the benefits. Tollefson, O'Hara, and Kvernen did not appear or testify at the hearings on the County's liability for their respective claims. Coachman appeared and testified at the hearing on his claim.

[¶ 19] The County argues the failure of Job Service to require the attendance and testimony of Tollefson, O'Hara, and Kvernen violated the due process requirements of *Westereng*. In *Westereng*, Job Service refused to disclose any information regarding the employee's subsequent employment, including the circumstances of her leaving, or any information that served as the basis for determining the employer's proportionate share of benefits. The district court reversed Job Service's order and remanded to the agency to allow the employer an opportunity to review the evidence upon which Job Service based its decision and to challenge Job Service's decision at a hearing.

■ [¶ 20] We affirmed the district court judgment, concluding the employer had a right to review information about the employee's subsequent employment history and to challenge Job Service's determination of eligibility and calculation of its proportionate share of benefits. *Westereng*, 2001 ND 114, ¶¶ 12–21, 628 N.W.2d 305. Our decision in *Westereng* does not, however, require Job Service to mandate the appearance and testimony of the employee in all cases. We required only that Job Service provide the information upon which its decision was based, and allow the employer to challenge eligibility and calculation of liability for benefits at the hearing. If the County wished to have the employees available to testify regarding their subsequent employment history, it had the right to have them subpoenaed upon request. N.D.C.C. §§ 28–32–33(3) and 52–06–23; *Stalcup v. Job Service North Dakota*, 1999 ND 67, ¶ 13, 592 N.W.2d 549. A party's failure to request that a witness be subpoenaed waives the right to have the witness present and available for cross-examination. *Stalcup*, at ¶ 13.

We agree with the district court's well-reasoned analysis of this issue:

Neither these statutes nor *Stutsman,* however, require Job Service to notice or subpoena the *claimant* .... Nothing would have prevented the County from requesting Job Service to issue subpoenas to require the claimants to testify at the hearings. The fact that Job Service did not notice or subpoena the claimants, when there is no evidence in the record that the County requested Job Service to subpoena the claimants, did not deny the County due process and a fair hearing.

The record also reveals that prior to the hearings in *Tollefson, O'Hara,* and *Kvernen,* Job Service provided the County with a Certificate of Information Abstract and an Abstract of Client Information containing information about wages earned, recent employment history, most recent employment separation history, and the amount of each base period employer's liability. At each hearing, a Job Service representative testified as to the underlying information from which the abstract was drawn. In each hearing, the County had the opportunity to cross examine the Job Service representative about the abstract and the information underlying it....

*Stutsman* 2001 ND 114, ¶¶ 12–22, 628 N.W.2d 305, holds that to afford the county due process and a fair hearing Job Service must disclose to the county the information Job Service used to determine a claimant's eligibility. Job Service complied with the mandates of *Stutsman* in providing information to the County. The fact that the only evidence in the record regarding information the claimants provided when they applied for benefits and the circumstance under which they left their subsequent employers was provided by Job Service Staff did not deny the County due process and a fair hearing.

[¶ 21] We conclude the failure of Job Service to require the appearance and testimony of the employees when the County did not request that they be subpoenaed did not violate due process.

V

[¶ 22] Because we conclude Job Service did not err on the merits in determining the County's liability for benefits and its procedures did not violate due process, we find it unnecessary to address whether the district court erred in dismissing the County's petition for review in Coachman's case. We have considered the remaining issues and arguments raised by the parties and find them to be either without merit or unnecessary to our decision. We do not answer questions that are unnecessary to the determination of the appeal. *E.g., Cass County Joint Water Res. Dist. v. 1.43 Acres of Land,* 2002 ND 83, ¶ 39, 643 N.W.2d 685.

[¶ 23] The judgment of the district court is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.