2011 ND 45

**Raymond J. GEFFRE, Appellant and Cross–Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF HEALTH, Appellee and Cross–Appellant.**

No. 20100110.

Supreme Court of North Dakota.

March 22, 2011.

Deborah Joan Carpenter, Bismarck, N.D., for appellant and cross-appellee.

Kirsten Renata Franzen, Assistant Attorney General, North Dakota Office of Attorney General, Bismarck, N.D., for appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Raymond J. Geffre appeals from a judgment affirming an administrative decision upholding the Department of Health's termination of his employment for cause. The Department cross-appeals from the district court's denial of its motion to dismiss Geffre's appeal and the court's award to Geffre of $1,289.79 in attorney fees incurred for responding to the Department's motion. We conclude that the district court did not err in refusing to dismiss Geffre's appeal, that the court did not abuse its discretion in award-

ing Geffre attorney fees, and that the administrative law judge's findings are supported by a preponderance of the evidence and those findings support the conclusions of law. We affirm the judgment as modified.

I

[¶ 2] The Department hired Geffre for the position of fire and life safety surveyor in December 2000. The position entailed surveying basic health care facilities, hospitals, long-term care facilities, ambulatory surgery centers, and intermediate care facilities for compliance with the Life Safety Code. In April 2004, Geffre received a pre-action notice informing him that the Department was considering disciplinary action against him for failing to follow departmental policy in accurately reporting hours worked, claiming payment for hours not worked, and working non-standard work days. After receiving a satisfactory response from Geffre, the Department took no further action.

[¶ 3] Geffre was issued another pre-action notice by the Department in February 2005. This notice informed Geffre the Department was considering terminating his employment for "your continuing performance problems" in the form of "your apparent disregard of your inappropriate use of Department time, your untruthfulness, [and] your failure to follow the policy and directive ... for working a non-standard workday." After his employment was terminated, Geffre filed an internal grievance which was reviewed by the State Health Officer. Although noting Geffre's actions provided "adequate grounds for dismissal," the State Health Officer reinstated Geffre's employment. The State Health Officer said to Geffre in a letter that he had "decided to provide you one last opportunity to appropriately follow

policies and procedures," and further informed him:

Your supervisor will outline specifically what is expected of you in terms of performance standards and professional behavior. Your performance will be monitored closely. It is my sincere hope that you recognize the seriousness of your actions and take corrective action to prevent any recurrence.

Upon his reinstatement, Geffre was presented with a work plan to monitor his work time and periodic performance reviews were scheduled. Geffre signed the document, agreeing with the contents of the work plan and stating he would abide by those conditions of employment as well as any state, Department, section and division policies, procedures and guidelines.

[¶ 4] Under the work plan, Geffre was required to log in and log out with an electronic key card when working in the Bismarck office. In September 2005, Geffre failed to comply with a Department directive when he parked in an unauthorized area on the Capitol grounds. Geffre's supervisor met with Geffre in September 2005 to discuss his performance surveys. The supervisor pointed out that safety citations made by a federal surveyor in "look behind" surveys revealed Geffre did not cite the same problems found by the federal surveyor. In addition, Geffre had a lower rate of citations than the Department's other two fire and life safety surveyors. In October 2005, it was discovered Geffre had been inaccurately recording his work time on some travel vouchers and claimed meal reimbursements he was not entitled to receive. After meeting with supervisors to discuss the work plan and the progress on his job performance, Geffre failed to consistently comply with the requirement to card in and card out, which made it difficult for the Department to evaluate the accuracy of his attendance

and expense reports. Geffre was issued a written warning and a modified work plan was implemented addressing his job performance issues. Geffre continued to identify and cite fewer deficiencies than the other surveyors, and he did not provide required monthly reports or consistently card in and card out of work.

[¶ 5] Geffre's need to improve his rate of citations, which was about one-half the rate of the other surveyors, became an ongoing performance issue in his performance reviews and in his work plan. In August 2007, Geffre smoked a cigarette in a State Fleet vehicle, contrary to policy. In September 2007, Geffre was issued another pre-action notice that termination of his employment was being considered by the Department. Geffre submitted a written response admitting parking in an unauthorized area on the Capitol grounds and smoking in a state vehicle, but stated, "for the past approximately 30 months, I have been routinely subjected to different standards, different treatment, and a different level of scrutiny than other Health Department employees. The allegations contained in the Notice are the direct result of those different standards, that different treatment, and different level of scrutiny." Geffre also said, "As a Fire Safety Surveyor, I've tried to use common sense in citing serious violations, not incidental, inconsequential trivialities. I believe that the Department's constituents have understood and appreciated my approach." The Department terminated Geffre's employment.

[¶ 6] Geffre appealed his termination to Human Resource Management Services ("HRMS"). Following an administrative hearing, the administrative law judge ("ALJ") upheld the Department's decision. The ALJ found the Department had cause to terminate Geffre's employment and Geffre had failed to show he was subjected to reprisal. Geffre appealed the decision to district court and served the notice of appeal and specifications of error on the State Health Officer, the Department's attorney, and the Attorney General. The Department moved to dismiss Geffre's appeal because he had failed to serve HRMS. The district court denied the motion, ordered the Department to prepare the record on appeal, and awarded Geffre $1,289.79 for attorney fees incurred in responding to the motion. The court affirmed the administrative decision upholding the Department's termination of Geffre's employment. These appeals followed.

II

[¶ 7] In its cross-appeal, the Department argues the district court erred in refusing to dismiss Geffre's appeal and in awarding Geffre attorney fees incurred in responding to the motion to dismiss.

A

[¶ 8] The Department argues Geffre's appeal should have been dismissed because Geffre failed to properly perfect the appeal. The Department contends Geffre was required to serve the notice of appeal and specifications of error on HRMS to properly perfect the appeal.

[¶ 9] An appellant must meet the statutory requirements for perfecting an administrative appeal for a district court to obtain subject matter jurisdiction over the appeal. *North Dakota Dep't of Human Services v. Ryan*, 2003 ND 196, ¶ 20, 672 N.W.2d 649. Appeals taken under the Administrative Agencies Practice Act are governed by N.D.C.C. § 28–32–42(4), which provides in relevant part:

An appeal shall be taken by serving a notice of appeal and specifications of error specifying the grounds on which the appeal is taken, upon the administra-

tive agency concerned, upon the attorney general or an assistant attorney general, and upon all the parties to the proceeding before the administrative agency, and by filing the notice of appeal and specifications of error together with proof of service of the notice of appeal, and the undertaking required by this section, with the clerk of the district court to which the appeal is taken.

[¶ 10] In *Ryan*, 2003 ND 196, ¶ 21, 672 N.W.2d 649, this Court held the failure of an employee to serve a notice of cross-appeal on HRMS, which at that time was named the Central Personnel Division, and on the ALJ did not deprive the district court of jurisdiction over an employee's cross-appeal. The Department of Human Services served the employee's counsel and the Central Personnel Division with its notice of appeal, but the employee only served the Department of Human Services and the assistant attorney general representing the Department with his notice of cross-appeal, and did not serve the Central Personnel Division or the ALJ. *Id.* at ¶ 19. We noted that under N.D.C.C. § 28–32–42(4), a notice of appeal must be served upon "the administrative agency concerned, upon the attorney general or an assistant attorney general, and upon all the parties to the proceeding before the administrative agency." *Ryan*, at ¶ 20. To determine whether the Central Personnel Division or the ALJ were either the "administrative agency concerned" or "parties to the proceeding," we relied on N.D.C.C. § 54–44.3–12.2, which at the time provided that "[a]n appeal to the district court from the determination of the administrative hearing officer must be filed according to chapter 28–32, but neither the division nor the office of administrative hearings may be named as a party to the appeal under chapter 28–32 unless an employee of one of those two agencies is involved in the grievance." *Ryan*, at ¶ 20.

Because the Central Personnel Division and the ALJ were not "parties to the appeal," and the Department of Human Services was the " 'administrative agency concerned' in the sense that it is the state agency taking the disciplinary action against the employee," we held that the employee's failure to serve notice of the cross-appeal upon the Central Personnel Division or the ALJ "did not deprive the district court of jurisdiction over his cross-appeal." *Id.* at ¶ 21.

[¶ 11] The Department argues that our decision in *Ryan* should not be applied to direct appeals from administrative decisions because *Ryan* "was concerned only with failure to serve on cross-appeals," and the "procedural importance of serving HRMS on direct appeal was not considered." The Department contends applying *Ryan* to direct appeals is improper because it would place the burden on the Department, the appellee, rather than Geffre, the appellant, to provide the administrative record on appeal.

[¶ 12] The Department's argument is not persuasive in this case. First, although the issue in *Ryan* involved a cross-appeal, this Court resolved the issue by focusing on the meaning of the statutory phrases "administrative agency concerned" and "parties to the proceeding" contained in N.D.C.C. § 28–32–42(4). 2003 ND 196, ¶ 20, 672 N.W.2d 649. If we were to adopt the Department's argument, HRMS would be considered an "administrative agency concerned" for purposes of direct appeals, but would not be considered an "administrative agency concerned" for purposes of cross-appeals. This contradictory application of the statutory term would surely lead to uncertainty and confusion. This Court favors eliminating, rather than creating, "traps for the unwary on the road to the appellate courthouse." *State v. Haakenson*, 213 N.W.2d 394, 399 (N.D.1973),

*overruled on other grounds, State v. Himmerick,* 499 N.W.2d 568 (N.D.1993); *see also Production Credit Ass'n v. Burk,* 427 N.W.2d 108, 111–12 (N.D.1988) (VandeWalle, J., concurring in result); *State v. Kopp,* 419 N.W.2d 169, 172 (N.D.1988).

[¶ 13] Second, we think the Department overstates the "burden" placed upon it by not requiring service on HRMS. The Department could simply contact HRMS when it receives a notice of appeal. An appellant remains responsible for the costs of preparation of the record under N.D.C.C. § 28–32–44(2).

[¶ 14] Third, the Department's perceived "burden" appears to have been lifted from its shoulders by the Legislature. About one month after the district court denied the Department's motion to dismiss in this case, the Legislature amended N.D.C.C. § 54–44.3–12.2 effective August 1, 2009. *See* 2009 N.D. Sess. Laws ch. 510, § 1. The Legislature amended the statutory language relied upon in *Ryan,* 2003 ND 196, ¶ 20, 672 N.W.2d 649, to read: "An appeal to the district court from the determination of the administrative *law judge* must be filed according to chapter 28–32, *including proper service upon the division,* but neither the division nor the office of administrative hearings may be named as a party to the appeal under chapter 28–32 unless an employee of one of those two agencies is involved in the grievance." 2009 N.D. Sess. Laws ch. 510, § 1 (amended language underscored). According to the director of HRMS, "this bill clarifies ... that HRMS must be served in any employee or agency appeal even though HRMS or the Office of Administrative Hearings is not considered a party to the appeal unless one of its employees is involved. HRMS is the custodian of the administrative record and must be served in order to certify the record to the district court." *Hearing on HB 1113 Before*

*House Government and Veterans Affairs Comm.,* 61st N.D. Legis. Sess. (January 9, 2009) (written testimony of Laurie Sterioti Hammeren, Director, Human Resource Management Services, Division of Office of Management and Budget).

[¶ 15] We decline the Department's invitation to overrule *Ryan* when applied to administrative appeals taken before August 2009. We do note, however, that in denying the motion to dismiss the district court ordered that "the Department initially bear the entire cost of preparing the record on appeal, subject to allocation of those costs at the close of the Court's review." The court's decision on the merits of Geffre's appeal does not allocate the cost of preparing the record to Geffre. We modify the judgment to assess the cost of preparing the record on appeal to Geffre, as is required by N.D.C.C. § 28–32–44(2).

[¶ 16] We conclude the district court did not err in refusing to dismiss Geffre's appeal because it was properly perfected under the law as it existed at the time.

**B**

[¶ 17] The Department argues the district court erred in awarding Geffre $1,289.79 for attorney fees incurred in responding to its motion to dismiss his appeal.

[¶ 18] The district court awarded Geffre his attorney fees for defending the Department's motion, concluding the "Department's failure to certify the record in a properly perfected appeal prejudiced the rights of Geffre, was in violation of N.D.C.C. § 28–32–44(2), Rule 11[,] N.D.R.Civ.P.[,] and was not substantially justified under N.D.C.C. § 28–32–50." In its ruling on the merits of the appeal, the court indicated its award of attorney fees was premised on N.D.R.Civ.P. 11. The Department contends the award of attor-

ney fees cannot be sustained under N.D.R.Civ.P. 11 because the court "did not explain why fees were appropriate under that rule," and cannot be sustained under N.D.C.C. § 28–32–50 because Geffre did not prevail on the merits of the appeal and the Department was substantially justified in its actions. We need not determine if the attorney fee award was proper under N.D.R.Civ.P. 11, because we conclude the court did not err in awarding attorney fees under N.D.C.C. § 28–32–50.

[¶ 19] Section 28–32–50(1), N.D.C.C., addresses attorney fees and costs in actions involving administrative agencies:

In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or an agent of an administrative agency, the court must award the party not an administrative agency reasonable attorney's fees and costs if the court finds in favor of that party and, in the case of a final agency order, determines that the administrative agency acted without substantial justification.

[¶ 20] This Court interpreted the predecessor statute to N.D.C.C. § 28–32–50(1) in *Little v. Traynor,* 1997 ND 128, 565 N.W.2d 766. *Little* involved a challenge to the Workers Compensation Bureau's rulemaking action setting attorney fee rates and fee caps. *Id.* at ¶ 1. Attorneys who represented numerous claimants before the Bureau appealed the Bureau's rulemaking action to district court. *Id.* at ¶¶ 2, 4. The Bureau moved for leave to pursue discovery and seek information about fees the attorneys received from clients. *Id.* at ¶ 4. The attorneys opposed the motion and requested an award of attorney fees, and the Bureau withdrew the motion. *Id.* The district court awarded the attorneys $450 for fees incurred in responding to the motion and invalidated the Bureau's rules. *Id.* at ¶¶ 4–6.

[¶ 21] On appeal, this Court reversed the district court's invalidation of the Bureau's rules, but upheld the award of attorney fees. *Little,* 1997 ND 128, ¶ 1, 565 N.W.2d 766. The Bureau argued the court erred in awarding the attorney fees because N.D.C.C. § 28–32–21.1(1), which is identical to N.D.C.C. § 28–32–50(1), did not apply to its motion for leave to pursue discovery, but authorized an award of attorney fees only if the nonadministrative party prevailed on the merits of the appeal. *Little,* at ¶ 36. We rejected the Bureau's argument:

Subsection 1 of the statute broadly directs a court in "any civil judicial proceeding" between a nonadministrative party and an agency to award the nonadministrative party reasonable attorney fees and costs "if the court finds in favor of that party and, *in the case of a final agency order, determines that the administrative agency acted without substantial justification.*" (Emphasis added). By limiting the "without substantial justification" requirement to cases of a "final agency order," the Legislature recognized attorney fees and costs could be awarded to a nonadministrative party who prevails in some instances without having to show an absence of substantial justification for the agency's action. This case did not involve a final agency order rendered by an agency acting in an adjudicatory, quasi-judicial capacity, *see Lamplighter Lounge, Inc. v. State,* 523 N.W.2d 73, 74–75 (N.D.1994), and the district court correctly ruled no showing of an absence of substantial justification was necessary.

The Legislature clearly evidenced its intention attorney fees and costs could be awarded to a nonadministrative party in some instances where the court simply "finds in favor of that party." The

Bureau's motion for leave to pursue discovery and the resulting request for attorney fees were clearly an intertwined part of this rulemaking appeal. The language of the statute does not limit payment of attorney fees and costs to instances where the nonadministrative party prevails on the underlying appeal, to the exclusion of other related motions and orders which are made and rendered in conjunction with the appeal. *Id.* at ¶¶ 39–40.

[¶ 22] Like the situation in *Little*, 1997 ND 128, ¶¶ 39–40, 565 N.W.2d 766, the district court here did not award the attorney fees based on the ALJ's final order, but awarded the attorney fees associated with the Department's "intertwined" motion to dismiss Geffre's appeal. The district court found in favor of Geffre and denied the Department's motion. Geffre was not required to show an absence of substantial justification to obtain the attorney fees incurred in relation to that motion, and whether Geffre prevailed on the merits of his appeal in district court or in this Court did not matter.

■ [¶ 23] We apply the abuse of discretion standard of review to a challenge of an award of attorney fees under N.D.C.C. § 28–32–50(1). *See Little*, 1997 ND 128, ¶ 41, 565 N.W.2d 766. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *In re Estate of Cashmore*, 2010 ND 159, ¶ 21, 787 N.W.2d 261. We conclude the district court did not abuse its discretion in awarding Geffre $1,289.79 in attorney fees incurred for responding to the Department's motion to dismiss the appeal.

### III

[¶ 24] Geffre argues the district court erred in upholding the Department's termination of his employment.

■ [¶ 25] We exercise limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Zimmerman v. North Dakota Workforce Safety and Ins. Fund*, 2010 ND 42, ¶ 4, 779 N.W.2d 372. The district court under N.D.C.C. § 28–32–46, and this Court under N.D.C.C. § 28–32–49, must affirm an administrative agency decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

■ [¶ 26] On appeal, we review the agency's decision and the record compiled before the agency, but we give respect to sound reasoning of the district court. *Sample v. North Dakota Dep't of Transp.*, 2009 ND 198, ¶ 5, 775 N.W.2d

707. When reviewing an agency's factual findings, we do not make independent findings or substitute our judgment for the agency's judgment, but instead determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record. *Workforce Safety and Ins. v. Auck,* 2010 ND 126, ¶ 9, 785 N.W.2d 186. Questions of law are fully reviewable on appeal. *Zimmerman,* 2010 ND 42, ¶ 5, 779 N.W.2d 372. When reviewing an appeal from a final decision by an independent ALJ, deference similar to that given an agency's factual findings is given to the ALJ's factual findings. *Auck,* at ¶ 9. We review the ALJ's factual findings under the same standard of review used for agency decisions, but we review the ALJ's legal conclusions in the same manner as legal conclusions generally. *Id.*

[¶ 27] Geffre was a "regular employee" under the definition of the term in N.D. Admin. Code § 4–07–20.1–02(4). Under N.D. Admin. Code § 4–07–19–03, a "regular employee may be disciplined only for cause." "Cause" is defined as "conduct or factors related to a regular employee's job duties, job performance, or working relationships that is detrimental to the discipline and efficiency of the service in which the employee is or was engaged." N.D. Admin. Code § 4–07–19–02(1). Under N.D. Admin. Code § 4–07–19–04, "[p]rogressive discipline must be used to correct a regular employee's job performance problems or for a violation of rules or standards unless an infraction or a violation of a serious nature is committed, including insubordination, theft, falsification of pay records, or assaulting or threatening to harm a supervisor or coworker, patient, or client, and for which the imposition of less severe disciplinary action would be inappropriate." "In an employer-employee relationship insubordination

'imports a willful disregard of express or implied directions of the employer and refusal to obey reasonable orders.'" *deOliveira v. State Bd. of Educ.,* 158 Ill.App.3d 111, 110 Ill.Dec. 337, 511 N.E.2d 172, 181–82 (1987) (quoting Black's Law Dictionary 942 (4th ed.1968)). The employer carries the burden of showing "cause" for the employee's dismissal. *See generally Lithun v. Grand Forks Pub. Sch. Dist. No. 1,* 307 N.W.2d 545, 554 (N.D.1981); *Seher v. Woodlawn Sch. Dist. No. 26,* 79 N.D. 818, 830, 59 N.W.2d 805, 811 (1953). Whether "cause" exists is a question of law fully reviewable by this Court. *North Dakota Dep't of Transp. v. Central Pers. Div.,* 1999 ND 198, ¶ 21, 600 N.W.2d 861.

[¶ 28] An appointing authority is precluded from taking reprisal action against a regular employee. *See Jacobs v. North Dakota State Pers. Bd.,* 551 N.W.2d 779, 782 (N.D.1996). "Reprisal" is defined as "an unfavorable employment-related action taken against a regular employee by an appointing authority for appealing to human resource management services or the state personnel board; for exercising the employee's rights under the Public Employees Relations Act of 1985, North Dakota Century Code chapter 34–11.1; for testifying before a legislative committee; or for requesting timely assistance under the employee assistance program." N.D. Admin. Code § 4–07–20.1–02(5). This Court has said, "[i]n order to establish a reprisal, an employee generally must show participation in protected activity, subsequent adverse employment action by the employer, and a causal connection between the two." *Volesky v. North Dakota Game and Fish Dep't,* 1997 ND 140, ¶ 20, 566 N.W.2d 812.

A

[¶ 29] Geffre argues the ALJ erred in placing the burden of proof upon him in these proceedings.

[¶ 30] In his appellate brief, Geffre claims "the Department bore the burden of proof by a preponderance that it had legitimate or just cause for the termination for misconduct, while Geffre bore the burden of proving his claim that his termination was the result of retaliation or reprisal." In her decision, the ALJ echoed Geffre's position when she determined the Department "met its burden to show there was cause to terminate Geffre's employment" and "Geffre has not met his burden to show he was subjected to reprisal." We see nothing in the record to indicate the ALJ misapplied the burden of proof. Geffre's argument is without merit.

### B

[¶ 31] Geffre argues he was denied due process in his termination and appeal proceedings.

[¶ 32] The United States Supreme Court has determined that "all the process that is due to ... a public employee is that he receive 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' coupled with a full post-termination administrative hearing." *Berdahl v. North Dakota State Pers. Bd.*, 447 N.W.2d 300, 305 (N.D.1989) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Here, the ALJ found the Department's pretermination and termination procedures were "in accordance with due process requirements to which public employees who have a property right in continued employment are entitled." The ALJ's finding is supported by the record. Geffre was given written preaction notification of the Department's intention to terminate his employment and was given an opportunity to respond. The Department considered Geffre's response and notified him in writing of its decision

to terminate his employment. Geffre received a full post-termination administrative hearing. Geffre's due process rights were not violated.

[¶ 33] Geffre's appellate brief is littered with other allegations of constitutional due process violations, but he provides no coherent constitutional analysis or citations to authority to support his allegations. "We have repeatedly cautioned a party making a constitutional claim must provide persuasive authority and reasoning, and without supportive reasoning or citations to relevant authorities an argument is without merit. . . . A party must do more than submit bare assertions to adequately raise a constitutional issue." *Olson v. Workforce Safety and Ins.*, 2008 ND 59, ¶ 26, 747 N.W.2d 71. Geffre's bare allegations of constitutional violations are without merit.

### C

[¶ 34] Stripped of the constitutional rhetoric, Geffre's arguments simply boil down to attacks on the ALJ's findings of fact and conclusions of law.

[¶ 35] There is evidence in the record that during his inspections of health facilities Geffre refused to cite deficiencies he believed were trivial, even though the Department had given him various opportunities to perform the inspections correctly. We agree with the ALJ that this conduct constituted insubordination and provided the Department cause to terminate Geffre's employment without applying progressive discipline under N.D. Admin. Code § 4–07–19–04. The ALJ correctly observed:

> The Department of Health met its burden to show there was cause to terminate Geffre's employment. Despite long-standing efforts to assist him to improve his job performance, Geffre failed or refused to correct his job per-

formance deficiencies to comply with stated performance expectations and to adhere to Departmental rules and policies. He was insubordinate in refusing to follow the directives of his supervisor and Division management to consistently cite all deficiencies found in conducting surveys of Health Facilities, even after being repeatedly instructed to do so and after repeated notation of his performance deficiency in that job task on performance reviews. Such conduct was certainly detrimental to the efficiency and discipline of the job in which Geffre was engaged and to the agency as a whole, and constitutes cause for termination of his employment.

[¶ 36] Furthermore, Geffre presented no evidence that the Department took reprisal action against him under the circumstances listed in N.D. Admin. Code § 4–07–20.1–02(5). Rather, Geffre contends "his termination was the result of retaliation or reprisal for having successfully challenged his earlier termination and been reinstated in his job." We agree with the ALJ's cogent rejection of this argument:

> Geffre was under a disciplinary performance improvement plan, one which he agreed to. He cannot come now after the fact and try to justify his failure to comply as "new and unreasonable burdens." His statement, "insisting on citation of deficiencies which, *in his judgment,* did not rise to the level of deficiencies" speaks volumes as to the reason for the unfortunate outcome in his case. He simply could not get beyond exercising his own judgment of what deficiencies to cite, instead of complying with direct orders to cite *all* deficiencies found in surveys.
>
> Geffre claims he was treated differently and subjected to more scrutiny than other Department employees. That is true, but not because the employer had singled him out in retaliation for any reason. Geffre was under a disciplinary performance improvement plan, unlike the other surveyors. Obviously that would result in more scrutiny and different performance expectations.
>
> Geffre was unable to establish even a *prima facie* showing of reprisal, which was his burden to do. Even had he done so, the Department of Health provided a reasonable explanation for its actions and established that its decision to terminate his employment was not a pretext or some hidden motivation for reprisal, but rather, it was based on legitimate reasons. Geffre's termination came about as the culmination of a long period of documented performance deficiencies and violation of agency rules and policies. The employer had in fact been very tolerant in giving Geffre ample time and opportunity to correct his performance deficiencies. The evidence shows that he was terminated, not as the result of any retaliatory animus on the part of his employer, but because of a lengthy record of persistent job performance deficiencies and insubordination.

[¶ 37] We conclude the ALJ's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision upholding the termination of Geffre's employment is supported by the conclusions of law.

## IV

[¶ 38] We have considered the other arguments raised by the parties and conclude they are either unnecessary to address in view of our disposition of the case or are without merit. The judgment is affirmed as modified.

[¶ 39] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.